IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FARM FRESH DIRECT DIRECT BY A CUT ABOVE LLC,<br>*Plaintiff*,<br>v.<br>STEVEN DOWNEY, *et al.*,<br>*Defendants*. | Civil Action No. ELH-17-1760 |

**MEMORANDUM OPINION**

Plaintiff Farm Fresh Direct Direct By a Cut Above, LLC ("Farm Fresh Direct") filed suit (ECF 1) against defendants Steven Downey; Clipper City Lending, LLC ("Clipper City"); Farm Fresh Direct Home Food Services, LLC ("Farm Fresh Home"); and Jessica Sinsky, alleging unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), and unfair competition and deceptive trade practices under Maryland common law (Count II). ECF 1 at 5-6.[1] Count III, for breach of contract, is brought only as to Downey and Clipper City. *See* ECF 1 at 6-7.[2]

---

[1] Deceptive trade practice is codified in the Commercial Law Article of the Maryland Code (2013 Repl. Vol., 2016 Supp.), §§ 13-301 *et seq.*

[2] Downey subsequently filed for bankruptcy. Therefore, the case is stayed as to him under 11 U.S.C. § 362(a)(1). However, in my Order of August 15, 2017 (ECF 16), I explained that the automatic stay as to Downey does not preclude the continuation of the suit as to Sinsky, Farm Fresh Home, and Clipper City. *Id.* at 2 (citing *Kreisher v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007)). Notably, neither Clipper City nor Farm Fresh Home responded to the suit. Accordingly, the Clerk entered default as to Clipper City on September 7, 2017 (ECF 19), and as to Farm Fresh Home on September 27, 2017. ECF 20.

On October 23, 2017, Downey, Sinsky, Farm Fresh Home, and Clipper City filed a "Motion to Request Hearing . . .", also styled as a "Complaint" (ECF 24), with multiple exhibits (ECF 24-1 through ECF 24-14), setting forth counterclaims and defenses. Downey appears to have signed ECF 24 on page 10. Clipper City is not included in the list of defendants at the end of the submission. *Id.* at 10-11.

Sinsky, who is self-represented, filed an Answer to the Complaint on July 24, 2017. ECF 10 ("Answer").[3] In addition, Sinsky moved to dismiss the Complaint. ECF 12 ("Motion"). Plaintiff opposes the Motion. ECF 14 ("Opposition"). No reply has been filed. *See* Docket.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. However, in resolving the Motion, the Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

For the reasons that follow, I shall deny the Motion.

## I. Factual Summary

In its Complaint (ECF 1), plaintiff states that Farm Fresh Direct has been registered as a limited liability corporation ("LLC") with the Maryland State Department of Assessments and Taxation ("SDAT") since December 22, 2016. ECF 1, ¶ 9. On June 7, 2017, plaintiff registered with SDAT its ownership of the trade name "Farm Fresh Direct Direct." *Id.* Plaintiff alleges that it has "worked to develop the Farm Fresh Direct trade name and trademark by working to create a network of providers inside and outside of Maryland," and by "working directly with suppliers throughout the mid-Atlantic region to bring fresh, natural and quality foods directly to consumers." *Id.* ¶ 10. Further, plaintiff asserts that it uses the Farm Fresh Direct trade name and trademark in interstate commerce. *Id.*

---

The Court reiterates, consistent with earlier advisements, that an LLC may only appear in court through counsel. ECF 11; ECF 16; ECF 22. Therefore, the submission is improper as to both Farm Fresh Home and Clipper City, even assuming the Orders of Default as to them (ECF 19; ECF 20) do not otherwise preclude such a submission. And, given that the case has been stayed as to Downey, the Court is unclear as to his right to make such a filing.

[3] On October 25, 2017, Sinsky filed a Motion to Amend her Answer. ECF 26. The Motion to Amend the Answer is not relevant to the disposition of the Motion.

According to plaintiff, "on or about April 5, 2017," it entered into an Independent Representative and Non-Compete Agreement ("Agreement") with Downey and Clipper City. *Id.* ¶ 11. Pursuant to the Agreement, Downey served as a representative salesperson for and on behalf of plaintiff. *Id.* The Agreement forms the basis for Count III, which pertains only to Downey and Clipper City and is not at issue in this Memorandum.

Plaintiff asserts that, on or about April 25, 2017, "Downey and . . . Sinsky filed with SDAT articles of organization for a competing company with name [sic] intentionally confusing with Farm Fresh Direct's, 'Farm Fresh Direct Direct Home Food Services, LLC.'" ECF 1, ¶ 12. Additionally, plaintiff asserts that the "filings with SDAT state that [Farm Fresh Home's] purpose is to sell fresh all natural food plans and other household items to residential customers." *Id.* ¶ 12. Of relevance here, plaintiff also alleges that "Sinsky is the resident agent and incorporator" for Farm Fresh Home. *Id.* ¶¶ 12-13.

Further, plaintiff alleges that Downey and Clipper City "attempt[ed] to open an account with [plaintiff's] meat supplier." *Id.* ¶ 15. And, "Downey and Clipper City have retained contact information for [plaintiff's] providers and clients, . . . and have created or are seeking to create commercial relationships with them in violation of the Agreement[,] unfairly completing [sic] with [plaintiff], including, through the use of the intentionally confusing . . . 'Farm Fresh Direct' name." *Id.* ¶ 16. Plaintiff adds: "Sinsky aided, abetted and supported these and other violations of Farm Fresh Direct's rights to the name Farm Fresh Direct Direct . . . ." *Id.* ¶ 16.

## II.    Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley*

*Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.

To be sure, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam). Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule

8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56. But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc);

*accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint", *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

### III. Discussion

Plaintiff alleges that Sinsky violated 15 U.S.C. § 1125(a)(1)(A) and engaged in unfair and deceptive trade practices, in violation of Maryland common law. ECF 1, ¶¶ 17-22, 23-26. At its core, plaintiff's contention is that "Sinsky is the resident agent and incorporator" of Farm Fresh Home (ECF 1, ¶¶ 12-13), and in that capacity she "filed" the articles of organization for Farm Fresh Home, creating a name for the "competing company" that is "intentionally confusing" because of its similarity to Farm Fresh Direct. ECF 1, ¶ 12.

#### A. Individual Liability

Farm Fresh Home is a limited liability company. As a threshold matter, I must determine whether Sinsky is subject to suit in light of Farm Fresh Home's status as a limited liability company.

It is well settled that "[a] corporation exists as a legal entity separate and distinct from its corporate shareholders." *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988); *see Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987). Notably, a corporation is a "'creature of legal fiction,'" and "'a corporation must of necessity act through its agents . . . .'" *Southern Management Corp. v. Taha*, 378 Md. 461, 480,

836 A.2d 627, 638 (2003) (citations omitted).

The concept of a corporation as a separate legal entity "is expressed by the colorful metaphor of the corporate veil, which presumes that acts of the corporation are not acts of the shareholder." *Johnson*, 814 F.2d at 980. The corporate veil doctrine "is a basic attribute of the corporate form; it encourages business investment and fosters stability in commercial transactions." *Cancun Adventure*, 862 F.2d at 1047. And, in Maryland "the fiction of the wholly separate corporate form is jealously guarded . . . ." *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011).

In the seminal Maryland case of *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 340 A.2d 225, 234 (1975), the Maryland Court of Appeals observed that, in the absence of fraud or unless necessary to enforce a paramount equity, shareholders are generally not liable for the acts of a corporation. It said, *id*. at 310, 340 A.2d at 234:

> The most frequently enunciated rule in Maryland is that although courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.

Similarly, in *Cancun Adventure*, 862 F.2d at 1047, the Fourth Circuit recognized that "[s]ubstantial ownership of a corporation by a single individual is not alone sufficient to pierce the corporate veil." Although the *Cancun* Court acknowledged that the corporate veil "is not sacrosanct," it cautioned that "[a] court's power to pierce the corporate veil and impose liability on a shareholder in his individual capacity [must] be exercised with extreme circumspection." *Id*.; *see also Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733, 838 A.2d 1204, 1209 (2003) (noting that a party may seek to pierce the corporate veil when "'necessary to prevent fraud or enforce a paramount equity'") (citations omitted); *DeWitt Truck Brokers, Inc. v. W. Ray*

*Flemming Co.*, 540 F.2d 681, 683 (4th Cir. 1976) (stating that the "power to pierce the corporate veil . . . is to be exercised 'reluctantly' and 'cautiously.'") (Citation omitted).

The challenge facing a party seeking to pierce the corporate veil has been described as "herculean." *Dixon v. Process Corp.*, 38 Md. App. 644, 645-46, 382 A.2d 893, 894-95 (1978) ("A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[] . . . [W]oe unto the creditor who seeks to rip away the corporate façade. . . ."). Indeed, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 309, 728 A.2d 783, 790-91 (1999). *Accord Whitmore v. Hawkins*, 217 F.3d 843, at *4 (4th Cir. 2000) (table).

To this Court's knowledge, no Maryland appellate court has issued a reported opinion allowing veil piercing to enforce a "paramount equity." *See Ramlall v. Mobile Pro Corp.*, 202 Md. App. 20, 30, 30 A.3d 1003, 1009 (2011). The "standard has been so narrowly construed that neither [the Maryland Court of Special Appeals] nor the [Maryland] Court of Appeals has ultimately 'found an equitable interest more important than the state's interest in limited shareholder liability.'" *Serio v. Baystate Props., LLC*, 209 Md. App. 545, 559-60, 60 A.3d 475, 484 (2013) (quoting *Residential Warranty*, 126 Md. App. at 307 n.13, 728 A.2d at 789 n.13). Even where a party seeks to hold a shareholder liable for conduct that was "clearly designed to cause the corporation to evade a legal obligation" and "had the effect of rendering [the corporation] 'all but insolvent,'" paramount equity does not justify piercing the veil. *Hildreth*, 378 Md. at 738-39, 838 A.2d at 1212-13 (quoting *Bart Arconti*, 275 Md. at 305, 340 A.2d at 231).

Of import here, the principles described above also apply to an LLC. Under Maryland law, a member of an LLC is not "personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company." Md. Code (2014 Repl. Vol., 2016 Supp.), § 4A-301 of the Corporations & Associations Article ("C.A."); *see Allen v. Dackman*, 413 Md. 132, 158, 991 A.2d 1216, 1228 (2010) ("[A] member of an LLC generally is not liable for torts committed by, or contractual obligations acquired by, the LLC."). Moreover, "a person cannot be held liable under a contract to which he was not a party. . . ." *Residential Warranty Corp.*, 126 Md. App. at 316, 728 A.2d at 794.

*Dackman*, *supra*, 413 Md. at 135-36, 991 A.2d at 1218, is instructive. There, the Maryland Court of Appeals considered whether a member of an LLC could be held liable for injuries sustained by lead paint victims at a property owned by the LLC. The *Dackman* Court concluded, *id.* at 154, 991 A.2d at 1228: "An LLC member is liable for torts he or she personally commits, inspires, or participates in because he or she personally committed a wrong, not 'solely' because he or she is a member of the LLC." Thus, the *Dackman* Court determined that a member of an LLC who had never intended to lease a property and was unaware that a property was occupied, could nevertheless be held personally liable for lead paint injuries at that property because the definition of "owner" under the Baltimore City Housing Code is broader than the plain language definition. *Id.* at 148-152, 991 A.2d at 1225-1229; *see also Planet Technologies, Inc.*, 735 F. Supp. 2d at 402 ("[A]lthough a corporate officer or agent is generally not liable for torts committed by the corporation, corporate officers or agents can be held liable for the torts that they 'personally commit, or which [they] inspire or participate in, even though performed in the name' of the corporation.") (alteration in *Planet Technologies, Inc.*) (quoting *Dackman*, 413

Md. at 153, 991 A.2d at 1228).

Moreover, when an individual defendant who is otherwise protected by an organization's limited liability shield commits a tort or violates the Lanham Act, she may be held individually liable. *See Newport News Holding Corp v. Virtual City Vision, Inc.*, 650 F.3d 423, 433-434 (4th Cir. 2011) (involving false advertising and unfair competition under 15 U.S.C. § 1125(a)); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987) (considering both a false association claim under § 1125(a) and a common law unfair competition claim); *Gorby v. Weiner*, TDC-13-3276, 2014 WL 4825962, at *7 (D. Md. Sept. 23, 2014) (containing a § 1125(a) false advertising claim and a common law unfair competition claim); *Planet Technologies, Inc. v. Planit Technology Group, LLC*, 735 F. Supp. 2d 397, 402, 405 (D. Md. 2010) (involving an unfair competition claim under Lanham Act, § 1, codified at 15 U.S.C. § 1051); *Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1065-66 (D. Md. 2002) (considering a § 1125(a) claim).

For example, in response to a § 1125(a) false association claim and a common law unfair competition claim, the Fourth Circuit has said: "A corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation. This is true in [§ 1125(a)] and unfair trade practices cases." *Polo Fashions, Inc.*, 816 F.2d at 149. Indeed, Lanham Act claims brought under § 1125(a) "are torts, as is the [common law] claim of Unfair Competition." *Gorby*, 2014 WL 4825962, at *7. "The Lanham Act creates in essence a federal statutory tort, derived from the common law tort of unfair competition." *Global Mail Ltd. v. U.S. Postal Service*, 142 F.3d 208, 211 (4th Cir. 1998); *see Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 376 (D. Md. 1989) ("[A]gents and employees of a corporation may become jointly and severally liable with the corporation for torts committed by

them while in the scope of service to the corporation."); *see also Stafford Urgent Care, Inc.*, 224 F. Supp. 2d at 1065-66 ("[I]t is equally well-established that an individual corporate officer or director can be held personally liable for [a § 1125(a) claim].").

Courts have considered different factors when determining whether an individual is liable for unfair competition or a violation of 15 U.S.C. § 1125(a)(1)(A). In *Polo Fashions, Inc.*, 816 F.2d at 147-49, the Fourth Circuit reviewed a § 1125(a) false association claim and reversed the district court's decision to shield two corporate officers from personal liability. Finding that one of the individuals was "president and principal stockholder" and the other was the "plant manager," and that the individuals "participated" in the infringement, the Fourth Circuit concluded that these individuals could be held personally liable for their alleged violations of, *inter alia*, 15 U.S.C. § 1125(a). *Id.* at 147, 150.

In *Gorby*, Judge Chuang denied the individual defendants' motions to dismiss because the plaintiff had "properly alleged viable claims of action against [the individual] Defendants" under § 1125(a)'s false advertising prong and Maryland's common law tort of unfair competition. 2014 WL 4825962, at *6-7. In that case, plaintiff had alleged that the defendants personally participated in the false advertising of plaintiff's successes and products. *Id.* at *7. In *Planet Technologies, Inc.*, 735 F. Supp. 2d at 405, the Court denied the individual defendant's motion to dismiss because the plaintiff had alleged that defendant "personally participated in the selection of the [offending company] name," and "authorized and approved" the offending activity by directing "counsel to file a trademark registration application." And, in *Stafford Urgent Care, Inc.*, 224 F. Supp. 2d at 1065-66, the Court denied the individual defendants' motion to dismiss because they had "incorporated the [offending] entity, using the [confusingly similar name] in its signage, with the intent and purpose of diverting patients and business from

[plaintiff's] facility."

Here, plaintiff has alleged that "Sinsky is the resident agent and incorporator" of Farm Fresh Home (ECF 1, ¶¶ 12-13), and that she personally "filed" its "articles of organization" to create a name confusingly similar to Farm Fresh Direct. ECF 1, ¶ 12. Further, plaintiff alleges that Sinsky incorporated Farm Fresh Home for the "purpose" of selling "fresh all natural food plans and other household items to residential customers," in competition with plaintiff. *Id.* Although plaintiff does not allege that Sinsky is an employee or officer of Farm Fresh Home, plaintiff does allege that Sinsky participated in alleged violations of the Lanham Act and engaged in unfair competition under Maryland common law by registering Farm Fresh Home's name with the SDAT. ECF 1, ¶ 12. The allegations are akin to those that were sufficient in *Stafford Urgent Care, Inc.*, 224 F. Supp. 2d at 1065-1066, where the defendant allegedly "incorporated the [offending] entity, using the [confusingly similar name] . . . with the intent and purpose of diverting . . . business from [plaintiff]."

The question here is not whether plaintiff will ultimately prevail. Its allegations as to Sinsky border on thin. But, for purposes of the Motion, plaintiff adequately alleges sufficient facts and inferences that Sinsky participated in the creation of Farm Fresh Home for the purpose of using a confusingly similar name to compete with Farm Fresh Direct. *See A Society Without a Name*, 655 F.3d at 346. Therefore, plaintiff is not entitled to the protection of the corporate shield at this juncture.

### B. Section 43(a) of the Lanham Act

In Count I, plaintiff claims a violation of Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a). *See* ECF 1 at 5-6. Plaintiff has adequately stated a claim.

The Lanham Act (the "Act") is intended, *inter alia*, to "regulate commerce within the

control of Congress by making actionable the deceptive and misleading use of marks in such commerce" and to thereby "protect persons[4] engaged in such commerce against unfair competition." 15 U.S.C. § 1127. Although "'much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, [§ 1125(a)] goes beyond trademark protection.'" *Belmora*, 819 F.3d at 706 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29 (2003)). Section 1125(a)(1) "sets forth unfair competition causes of action for [both] false association and false advertising." *Belmora*, 819 F.3d at 706.

In relevant part, §§ 1125(a)(1)(A), (B) of the Act state:

(1) Any person who . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .

> (A) [False Association:] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) [False Advertising:] in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Thus § 1125(a)(1) provides two grounds for a plaintiff to assert an unfair competition claim. The first ground protects against "false association." Specifically, § 1125(a)(1)(A) protects against "false designation of origin" likely to cause "confusion, . . . mistake, or to deceive as to the . . . association of such person with another."[5] The second

---

[4] The Act defines "person" as "a juristic person as well as a natural person," and defines "juristic person" to "include[] a firm, corporation, union, association, or other organization capable of suing and being sued in a court of law." 15 U.S.C. § 1127.

[5] In § 1125(a) cases, the terms "false designation" and "false association" are often used

ground protects against false "commercial advertising or promotion." § 1125(a)(1)(B). *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377, 1384 (2014); *see Belmora*, 819 F.3d at 706 ("Subsection A, which creates liability for statements as to 'affiliation, connection, or association' of goods, describes the cause of action known as 'false association.' Subsection B, which creates liability for 'misrepresent[ing] the nature, characteristics, qualities, or geographic origin' of goods, defines the cause of action for 'false advertising.'"); *Int'l Found. of Emp. Benefit Plans v. Cottrell*, WDQ-14-1269, 2015 WL 127839, at *2 (D. Md. Jan. 7, 2015).

Plaintiff alleges only the violation of § 1125(a)(1)(A) of the Act, *i.e.*, the false association prong. ECF 14 at 4-6. A plaintiff's success under § 1125(a)(1)(A) requires the *defendant's* "*use in commerce*" of "any word, term, name, symbol, or device" or "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact[.]" (Emphasis added).[6] And, although plaintiff argues that § 1125(a)(1) broadly authorizes suit by "any person who believes that he or she is or is likely to be damaged by" defendant's "use[ of a false association] in commerce" (ECF 14 at 5), the *Lexmark* Court explained that § 1125(a) "should not get such an expansive reading." *Lexmark*, 134 S. Ct. at 1388 (citation omitted).

---

interchangeably. *See Belmora*, 819 F.3d at 705 n.4. In the Opposition, plaintiff uses both terms. *See* ECF 14 at 4 ("false association"); ECF 14 at 5 ("false designation"). However, as the Fourth Circuit noted in *Belmora*, it is "preferable to follow the Supreme Court's terminology in *Lexmark* [*Int'l., Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377 (2014)]", where the Court used the term "false association." *Belmora*, 819 F.3d at 705 n.4.

[6] Notably, § 1125(a) does not require a plaintiff to have possessed or used a registered trademark in U.S. commerce. *Belmora*, 819 F.3d at 706 (distinguishing the requirements of a "false association" claim under § 1125(a) with those of a trademark infringement suit under Lanham Act § 32, codified at 15 U.S.C. § 1114); *id.* at 708 ("Nothing in *Lexmark* can be read to suggest that [§ 1125(a)] claims have an unstated requirement that the plaintiff have first used its own mark (word, term, name, symbol, or device) in U.S. commerce before a cause of action will lie against a defendant who is breaching the statute.").

In order to pursue a claim under § 1125(a), a plaintiff who has sufficiently alleged a defendant's "use in commerce" of a false association must also satisfy *Lexmark's* two-part inquiry: (1) whether plaintiff's allegations fall within § 1125(a)(1)(A)'s zone of interests; and (2) whether plaintiff has alleged "proximate causation of a cognizable injury." *Lexmark*, 134 S. Ct. at 1389-90, 1391 ("The zone-of-interests test is therefore an appropriate tool for determining who may invoke the cause of action in § 1125(a)" and "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant[.]"); *see Belmora*, 819 F.3d at 710.

To meet the zone of interests test, a plaintiff must sufficiently allege facts showing its claim furthers an enumerated purpose of § 1125(a)(1)(A). *Lexmark*, 134 S. Ct. at 1389; *Belmora*, 819 F.3d at 711. But, the "breadth of the zone of interests varies according to the provisions of law at issue." 134 S. Ct. at 1389. In other words, although the zone of interests test "is not 'especially demanding'" in the context of the Administrative Procedure Act's "'generous review provisions'", it may require more of a plaintiff bringing suit under another statute. *Id.* However, "[i]dentifying the interests protected by the Lanham Act . . . requires no guesswork, since the Act includes an 'unusual, and extraordinarily helpful,' detailed statement of the statute's purposes." *Lexmark*, 134 S. Ct. at 1389 (quoting *H.B. Halicki Productions v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987)). Those purposes are outlined in 15 U.S.C. § 1127, which states:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between

the United States and foreign nations.

Notably, the *Lexmark* Court said: "Most of the [Act's] enumerated purposes are relevant to false-association cases." 134 S. Ct. at 1389. Among § 1127's purposes is Congress's intent to "protect persons . . . against unfair competition" by "making actionable the deceptive and misleading use of marks" in "commerce." 15 U.S.C. § 1127; *see also Belmora*, 819 F.3d at 711 (drawing upon this purpose in a Lanham Act, false association case).

A plaintiff must then allege sufficient facts to show its "injuries are proximately caused by violations of [§ 1125(a)(1)(A)]", rather than a cause "that is 'too remote' from the defendant's unlawful conduct." *Lexmark*, 134 S. Ct. at 1390 (citations omitted) (stating that harm is too remote when it "is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'"). To show proximate cause in a § 1125(a)(1)(A) claim, the plaintiff must allege "'economic or reputational injury flowing directly from the deception wrought by the defendant's'" false association. *Belmora*, 819 F.3d at 711-12 (quoting *Lexmark*, 134 S. Ct. at 1391).

Plaintiff has alleged facts sufficient to defeat Sinsky's motion to dismiss the § 1125(a)(1)(A) false association claim. As noted, 15 U.S.C. § 1125(a)(1)(A) protects against "false designation of origin" likely to cause "confusion, . . . mistake, or to deceive as to the . . . association of such person with another." A plaintiff's success under § 1125(a)(1)(A) requires the *defendant's* "*use in commerce*" of "any word, term, name, symbol, or device" or "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact[.]" (Emphasis added). Here, the alleged offending "word, term, name, symbol, or device" is the Farm Fresh Home name. Plaintiff alleges that Sinsky was the "incorporator" of Farm Fresh Home (ECF 1, ¶¶ 12-13), because she "filed" its "articles of

organization" and thereby created a "false designation of origin," § 1125(a)(1), in the form of Farm Fresh Home, LLC. ECF 1, ¶ 12.

This name, plaintiff alleges, is confusingly similar to its own name, Farm Fresh Direct. ECF 1, ¶ 12. Construing the facts in the light most favorable to the plaintiff, as I must, plaintiff has adequately alleged that the similarity between the names is likely to cause "mistake, or to deceive as to the . . . association of such person with another." § 1125(a)(1)(A). Thus, plaintiff has alleged facts plausibly showing Sinsky's actions contributed to the "use in commerce" of a "false designation" of the Farm Fresh Direct "name." *Id.*

Because plaintiff has sufficiently alleged facts showing its claim furthers an enumerated purpose of § 1125(a), it has also met the zone of interests test. *See Lexmark*, 134 S. Ct. at 1389; *Belmora*, 819 F.3d at 711. As the *Lexmark* Court stated, "Identifying the interests protected by the Lanham Act . . . requires no guesswork . . . ." *Lexmark*, 134 S. Ct. at 1389. Here, as in *Belmora*, the relevant Lanham Act purpose is the protection of persons from unfair competition by "making actionable the deceptive and misleading use of marks" in "commerce." 15 U.S.C. § 1127; *Belmora*, 819 F.3d at 711. According to plaintiff, Sinsky organized Farm Fresh Home with the "purpose [of] sell[ing] fresh all natural food plans and other household items to residential customers", in competition with plaintiff (ECF 1, ¶ 12), by using a confusingly similar name to that of plaintiff, Farm Fresh Direct. ECF 1, ¶ 12. Therefore, plaintiff has plausibly alleged that its claim is within the intended reach of § 1125(a)(1)(A).

And, because plaintiff alleges plausible facts to create the inference that "economic or reputational injury" is at least likely to "'flow[] directly from the deception wrought by'" the false association, *Belmora*, 819 F.3d at 711-12 (quoting *Lexmark*, 134 S. Ct. at 1391), plaintiff has met its burden under *Lexmark's* proximate causation inquiry. Plaintiff alleges Sinsky

organized an LLC with the deceptively similar name to that of plaintiff's company (ECF 1, ¶ 12), and that she did so to sell products similar to those of plaintiff. ECF 1, ¶ 12. Plaintiff also alleges that it has "worked to develop the Farm Fresh Direct trade name and trademark by working to create a network of providers inside and outside of Maryland," and by "working directly with suppliers throughout the mid-Atlantic region to bring fresh, natural and quality foods directly to consumers." ECF 1, ¶ 10.

For the foregoing reasons, I shall deny Sinsky's Motion as to plaintiff's § 1125(a)(1)(A) false association claim.

### C. Unfair Competition Under Maryland Common Law

In Count II, plaintiff asserts unfair competition under Maryland common law. *See* ECF 1 at 6.

Maryland's common law tort of unfair competition can extend to "'all cases . . . in the field of business.'" *Electronics Store, Inc. v. Cellco Partnership*, 127 Md. App. 385, 407, 732 A.2d 980, 991 (1999) (quoting *Baltimore Bedding Corp. v. Moses*, 182 Md. 229, 236, 34 A.2d 338, 342 (1943)). Generally, "Unfair competition is 'damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort.'" *Thompson v. UBS Financial Services, Inc.*, 443 Md. 47, 60, 115 A.3d 125, 133 (2015) (quoting *Balt. Bedding Corp*, 182 Md. at 237, 34 A.2d at 342) (internal quotation marks omitted). As Judge Chuang noted in *Gorby*, 2014 WL 4825962, at *6, "unfair competition makes an individual liable for a deception that results in 'the goods of one dealer [being] passed off as the goods of another, and the seller receiv[ing] the profit which he would not have received except for such deception.'" (Quoting *Edmondson Village Theatre v. Einbinder*, 208 Md. 38, 44, 116 A.2d 377, 380 (1955)). The rules of unfair competition preclude "trading by one dealer upon the good name and reputation built

up by another." *Balt. Bedding*, 182 Md. at 237, 34 A.2d at 342.

However, unfair competition is not limited to "passing off" a competitor's wares as one's own. *Delmarva Sash & Door Co. of Md., Inc. v. Anderson Windows, Inc.*, 218 F. Supp. 2d 729, 733 (D. Md. 2002) (citing *GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.*, 27 Md. App. 172, 189, 340 A.2d 736, 747 (1975); *Edmondson Village Theatre*, 208 Md. at 42, 116 A.2d at 379)). As Judge Blake noted in *Delmarva*, 218 F. Supp. 2d at 733, the Maryland Court of Appeals "has preserved a high degree of flexibility in the law of unfair competition." She said, *id.* (quoting *Balt. Bedding*, 182 Md. at 237, 34 A.2d at 342):

> "What constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception."

Moreover, "[t]he legal principles which are controlling here are simply the principles of old-fashioned honesty. One [person] may not reap where another has sown, nor gather where another has strewn." *GAI Audio*, 27 Md. App. at 192, 340 A.2d at 748 (citation omitted). Therefore, "in cases of unfair competition, fraudulent intent is not essential . . . ." *Edmondson Village Theatre*, 208 Md. at 46, 116 A.2d at 381. Indeed, the "absence of fraudulent intent ought not to stay the hand of the court where a trade name is adopted so similar to a trade name already in use by a business competitor that it is obvious that injury to the original user will inevitably result." *Id.*

Plaintiff alleges that Sinsky organized Farm Fresh Home with the purpose of competing with plaintiff. ECF 1, ¶ 12. Further, plaintiff alleges that the name Farm Fresh Home was intended to confuse plaintiff's providers and customers and thus encourage them to deal with Farm Fresh Home, rather than with Farm Fresh Direct. ECF 1, ¶¶ 12, 16. It is not essential that plaintiff allege Sinsky herself intended to perpetrate a fraud. Farm Fresh Home is "so

similar to a trade name already in use by [Farm Fresh Direct]", which is "a business competitor," that "it is [at least plausible] that injury to [Farm Fresh Direct] will inevitably result." *Edmondson Village Theatre*, 208 Md. at 46, 116 A.2d at 381. By alleging facts showing Farm Fresh Direct, through Downey, has contacted plaintiff's "meat supplier" (ECF 1, ¶ 15) and has retained lists of plaintiff's "providers and clients" (ECF 1, ¶ 16), plaintiff has plausibly articulated how Farm Fresh Home is attempting to "reap where [Farm Fresh Direct] has sown."

For these reasons, I shall deny the Motion as to plaintiff's unfair competition claim.

## IV. Conclusion

I shall DENY the Motion because plaintiff has alleged facts sufficient to state a claim under 15 U.S.C. § 1125(a)(1)(A) and the Maryland common law, as to the tort of unfair competition.

An Order follows.


Date: <u>October 26, 2017</u>                     <u>     /s/     </u>
                                              Ellen Lipton Hollander
                                              United States District Judge