IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FARM FRESH DIRECT DIRECT BY
A CUT ABOVE LLC,

   *Plaintiff*,

  v.

STEVEN DOWNEY, *et al.*,

   *Defendants*.

Civil Action No. ELH-17-1760

**MEMORANDUM OPINION**

In this commercial dispute, plaintiff Farm Fresh Direct Direct By a Cut Above, LLC ("Farm Fresh Direct")[1] filed suit against defendants Jessica Sinsky; Steven Downey; Clipper City Lending, LLC ("Clipper City"); and Farm Fresh Direct Home Food Services, LLC ("Farm Fresh Home"), alleging unfair competition in violation of Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a) (Count One), and unfair competition and deceptive trade practices under Maryland common law (Count Two). ECF 1 ("Complaint").[2] Count Three alleges breach of contract only as to Downey and Clipper City. *See id.* at 6-7.

Downey, who is self-represented, lodged a counterclaim against Farm Fresh Direct (ECF 33) ("Counterclaim"), supported by exhibits. *See* ECF 33-1 through ECF 33-14.[3] The Counterclaim is titled "Amended Motion to Request Hearing and/or Declare 'Independent

---

[1] In the Complaint, counsel for plaintiff refer to their client as "Farm Fresh Direct Direct by A Cut Above LLC." ECF 1 at 1. However, documents submitted in this litigation indicate that the client's name is "Farm Fresh Direct by A Cut Above LLC." *See* ECF 33-8 at 4-9.

[2] Deceptive trade practice is codified in the Commercial Law Article of the Maryland Code (2013 Repl. Vol., 2016 Supp.), §§ 13-301 *et seq.*

[3] As discussed, *infra*, this case was previously stayed as to Downey, pursuant to 11 U.S.C. § 362(a)(1). *See* ECF 16 at 2. By Order of March 29, 2018 (ECF 46), I lifted that stay.

Representative Agreement' & 'Non-Compete Agreement' a Fraudulent, Unenforceable & Illegal Document which forced signing took place under duress and HEREBY Counterclaims." *Id.*

Pending are numerous motions filed by Sinsky, Downey, and Farm Fresh Direct.

On behalf of Clipper City and Farm Fresh Home, Downey filed a "Motion to Set-Aside Default Judgement." ECF 35. Notably, no default judgment has been entered as to either entity. *See* Docket. In any event, Downey, who is not a lawyer, is not entitled to file any pleadings on behalf of either entity. *See* ECF 11; ECF 16; ECF 27; ECF 38. Farm Fresh Direct opposes the motion. *See* ECF 44.

In addition, Downey filed a "Motion to Request and Set-In a Hearing Date" on behalf of himself, Clipper City, and Farm Fresh Home. *See* ECF 37. Farm Fresh Direct did not respond. *See* Docket. Downey filed a second "Motion to Request and Set-In a Hearing Date" (ECF 39), asking the Court to hold a hearing with regard to Downey's Counterclaim. Farm Fresh Direct opposes that request. *See* ECF 41.

Further, Downey filed a "Motion for Partial Dismissal as to Count III of the Complaint – Breach of Contract" (ECF 40), which is supported by several exhibits. *See* ECF 40-1 through ECF 40-9. Plaintiff opposes this motion. ECF 43. Downey has not filed a reply (*see* Docket), and the time to do so has expired. *See* Local Rule 105.2.a.

Sinsky, who is also self-represented, has filed a Motion to Amend her Answer to the Complaint. *See* ECF 26.[4] Farm Fresh Direct has not opposed Sinsky's Motion to Amend (*see* Docket), and the time to do so has expired. *See* Local Rule 105.2.a.

Farm Fresh Direct has filed a motion to dismiss Downey's Counterclaim. ECF 34. By

---

[4] Sinsky previously moved to dismiss the Complaint as to her. *See* ECF 12 (Sinsky's motion to dismiss). By Memorandum Opinion (ECF 27) and Order (ECF 28) of October 26, 2017, I denied her motion to dismiss.

Order of March 29, 2018 (ECF 46), I directed the Clerk to notify Downey as to the filing of the motion to dismiss and his right to respond. Notice was mailed to Downey that same day. ECF 47. Downey subsequently filed a response in opposition to the motion to dismiss. ECF 50. And, Farm Fresh Direct has replied. *See* ECF 53.

Farm Fresh Direct has also filed a "Motion for Order to Show Cause" (ECF 45), with an accompanying memorandum of law (ECF 45-1), asking the Court to issue an order as to why Downey should not be held in contempt and sanctioned. ECF 45-1 at 1, 5. In its motion, Farm Fresh Direct argues that Downey has failed to comply with orders and instructions of this Court, prohibiting him from litigating on behalf of Clipper City and/or Farm Fresh Home. *Id.*; *see, e.g.*, ECF 11; ECF 16. Downey has not responded to this motion (*see* Docket), and the time for him to do so has passed. *See* Local Rule 105.2.a.

The Court is mindful of its obligation to construe liberally the pleadings of pro se litigants, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nevertheless, no hearing is necessary to resolve these motions. *See* Local Rule 105.6.

For the reasons that follow, I shall grant Sinsky's unopposed Motion to Amend her Answer (ECF 26). I shall deny Farm Fresh Direct's Motion to Dismiss Downey's Counterclaim (ECF 34). And, I shall construe Downey's Answer (ECF 49) to include the Counterclaim (ECF 33). I shall deny Downey's Motion to Dismiss Count Three of the Complaint (ECF 40). I shall also deny Downey's Motion to Set-Aside Default Judgment as to Clipper City and Farm Fresh Home (ECF 35), as well as his motions requesting hearings (ECF 37; ECF 39). Moreover, I shall deny Farm Fresh Direct's motion for a show cause order. ECF 45.

# I.     Factual and Procedural Background

## A.

Farm Fresh Direct is a Maryland limited liability company ("LLC").  ECF 1, ¶ 1.  It describes itself as a "direct-to-consumer supplier of quality, natural foods and related services." *Id.*  Farm Fresh Direct claims to own the trade name "Farm Fresh Direct Direct."  *Id.* ¶ 9. Lawrence Everett and Robert Siegal are co-owners of Farm Fresh Direct, each owning a 50% share in the company.  ECF 33, ¶¶ 3, 7.  Alan Fabian is the Chief Financial Officer of Farm Fresh Direct.  ECF 33, ¶¶ 4-5.

Clipper City is a Maryland LLC.  ECF 1, ¶ 2-3.  Downey is its "sole Owner" and its "sole member."  ECF 33, ¶¶ 12, 16; *see also* ECF 33-8 at 2 (email from Fabian to Downey, dated April 5, 2017).  Farm Fresh Home is also a Maryland LLC.  ECF 1, ¶ 4.  And, Downey is its "sole Owner" and its "sole member."  ECF 33, ¶¶ 10, 17.  Sinsky is the "resident agent and incorporator" of Farm Fresh Home.  ECF 1, ¶ 13.

Plaintiff states that on June 7, 2017, it registered ownership of the trade name "Farm Fresh Direct Direct" with the Maryland State Department of Assessments and Taxation ("SDAT").  ECF 1, ¶ 9.  Downey claims that he was hired, on an unspecified date, by Siegal to be an "Independent Contractor/Sales Representative" for Farm Fresh Direct.  ECF 33, ¶ 23. Downey also asserts that when he was hired Siegal informed him that "there would be no 'Non-Compete Agreement' required as a condition of employment" with Farm Fresh Direct. ECF 33, ¶ 53; *see also id.* ¶ 26.

According to Downey, he attended "Sales Training," without compensation, from February 20, 2017, through March 4, 2017.  ECF 33, ¶¶ 24, 25.  Beginning on March 9, 2017, Downey "began running sales appointments on behalf of" plaintiff.  ECF 33, ¶ 34.  Downey

expected to be paid "by close of business, Friday, April 7, 2017."  *Id.* ¶ 35.

On April 5, 2017, Downey received an email from Fabian, titled "Representative Agreement & Non-Compete Agreement."  ECF 33, ¶ 36; *see also* ECF 33-8 at 2-3 (email from Fabian to Downey, dated April 5, 2017).  Attached to Fabian's email were unsigned and undated versions of an Independent Representative Agreement ("IRA") and a Non-Compete Agreement ("NCA") (the "Agreements").  *See* ECF 33-8 at 4-6 (IRA); ECF 33-8 at 7-8 (NCA).  In the body of the email, Fabian stated, *inter alia*, that Downey must "execute these agreements" and "return a scanned copy and the original" to Fabian "before" Fabian could "issue any commission payments" to Downey.  ECF 33-8 at 2.

According to Farm Fresh Direct, "on or about April 5, 2017," Farm Fresh Direct entered into an IRA and an NCA with Clipper City and Downey.  ECF 1, ¶ 11.  As indicated, on April 5, 2017, Fabian attached unsigned and undated copies of the IRA and the NCA to an email sent to Downey.  *See* ECF 33-8 at 2-8.  The text of the IRA and the NCA indicate they were "entered into as of March 5, 2017."  ECF 33-8 at 7 (NCA); *see also id.* at 4 (IRA).  However, there is no indication that the Agreements were executed on that date.

By email to Fabian dated April 12, 2017, and titled "Independent Representative Agreement – Ratified – 4.5.2017.pdf" (ECF 33-10 at 2), Downey attached a copy of the IRA that was dated April 5, 2017, signed by Downey on behalf of himself and Clipper City.  ECF 33-10 at 4-6.  However, the NCA was not attached to this email.  *See* ECF 33-10.

In an email of April 12, 2017 (ECF 33-11), Fabian wrote to Downey stating, *id.* at 2: "The noncompete agreement which is an integral part of this agreement is not attached."  Downey asserts that he "did not in good conscience provide 'Farm Fresh Direct' (Plaintiff) with a ratified copy of the . . . 'Non-Compete Agreement.'"  ECF 33, ¶ 37.

Downey maintains that Farm Fresh Direct refused to pay him unless and until he "executed the . . . 'Non-Compete Agreement.'" ECF 33, ¶ 40. By email of April 13, 2017 (ECF 33-12 at 2), titled "Notice Regarding Payroll," Fabian wrote to Downey, stating that Farm Fresh Direct would "need the rest of the documents I sent you signed prior to payment."

By email dated April 18, 2017 (ECF 33-13), Downey provided Fabian with a copy of the NCA (ECF 33-13 at 7-8), dated April 5, 2017, which Downey signed on behalf of himself and Clipper City. *Id.* at 8. According to Downey, he was "forced/compelled while under duress" of nonpayment to sign the NCA, "against his wishes." ECF 33, ¶ 40.

The IRA and the NCA are central to Count Three of the Complaint, which alleges breach of contract against Downey and Clipper City. *See* ECF 1. The Agreements are also central to Downey's Counterclaim, which contends, *inter alia*, that the IRA and the NCA are unenforceable. *See* ECF 33.

Although plaintiff did not submit the Agreements with the Complaint (*see* ECF 1), Downey has submitted versions of the IRA and the NCA with his Counterclaim. *See* ECF 33-8 at 4-6 (unsigned and undated IRA); ECF 33-8 at 7-8 (unsigned and undated NCA). As indicated, Downey signed both the IRA and the NCA on behalf of himself and Clipper City, and the Agreements are dated April 5, 2017. *See* ECF 33-10 at 4-6 (IRA); ECF 33-13 at 7-8 (NCA). Both the IRA (ECF 33-10 at 4-6) and the NCA (ECF 33-13 at 7-8) indicate that Everett was the agent designated to sign the Agreements on behalf of Farm Fresh Direct. *See* ECF 33-10 at 6; ECF 33-13 at 8. However, no version of the IRA or the NCA submitted to the Court bears a signature of a Farm Fresh Direct representative.

The IRA defines Clipper City as the "Representative" and Farm Fresh Direct as the "Company." ECF 33-10 at 4. And, it states: "The COMPANY hereby employs the

REPRESENTATIVE to perform . . . salesman services on behalf of the COMPANY . . . ." *Id* (capital letters in original); *see also* ECF 1, ¶ 11.  But, the IRA also specifies that, "[u]nless otherwise agreed, all work will be performed by Steven Downey."  ECF 33-10 at 4. Additionally, the IRA states, *id.* at 5-6:

### 7. CONFIDENTIAL INFORMATION

The REPRESENTATIVE agrees that any and all information received by the REPRESENTATIVE during the furtherance of the REPRESENTATIVE's obligations in accordance with this contract, which concerns the personal, financial or other affairs of the COMPANY to include written, oral, printed, web-based or any other form will be treated by the REPRESENTATIVE in full confidence and will not be revealed to any other persons, firms or organizations without the prior oral or written permission of the COMPANY.

This clause will continue in effect for one (1) year after the termination of this agreement.

*The REPRESENTATIVE agrees that it and Steven Downey will be liable for any damages resulting from a breach of this clause.*

(Bold text and capital letters in original; italics added); *see also* ECF 1 at 3-4.

The NCA states that it was "entered into . . . between FARM FRESH DIRECT . . . (the 'Company') and CLIPPER CITY LENDING LLC AND STEVEN DOWNEY (the 'Representative'), both of whom agree to be bound by this Agreement."  ECF 33-13 at 7.  The NCA further states, *id.* (capital letters in original):

NON-COMPETITION. For the duration of the Representative Agreement and any subsequent agreement executed for the same or similar purpose and for ONE (1) YEAR after the termination of such agreements, the Representative shall not work as an employee, officer, director, partner, consultant, agent, owner, or in any other capacity in any competition with the Company. This means that the Representative must not do any of the above for a COMPANY that PROVIDES HOME FOOD SERVICES OF ANY TYPE in NORTHERN VIRGINIA, DISTRICT OF COLUMBIA, MARYLAND AND SOUTHERN PENNSYLVANIA.

REPRESENTATIVE ACKNOWLEDGMENTS. The Representative acknowledges that: (a) this Agreement has been specifically bargained between

the Parties; (b) the Representative has had the opportunity to obtain legal counsel to review this Agreement; (c) the restrictions imposed are fair, reasonable and necessary to protect the legitimate business interests of the Company; and (d) such restrictions will not place an undue burden upon the Representative's livelihood in the event of enforcement of the restrictions described.

Farm Fresh Direct avers that Downey and Clipper City acquired confidential information relating to Farm Fresh Direct's customers. ECF 1, ¶ 12. Moreover, it asserts that, on or about April 25, 2017, "Downey and . . . Sinsky filed with SDAT articles of organization for a competing company with name [sic] intentionally confusing with Farm Fresh Direct's, 'Farm Fresh Direct Direct Home Food Services, LLC.'" *Id*. Additionally, plaintiff asserts that the "filings with SDAT state that [Farm Fresh Home's] purpose is to sell fresh all natural food plans and other household items to residential customers." *Id*. ¶ 12.

Further, plaintiff alleges that Downey and Clipper City "attempt[ed] to open an account with [plaintiff's] meat supplier." *Id*. ¶ 15. And, plaintiff claims that "Downey and Clipper City have retained contact information for [plaintiff's] providers and clients, . . . and have created or are seeking to create commercial relationships with them in violation of the Agreement[,] unfairly completing [sic] with [plaintiff], including, through the use of the intentionally confusing . . . 'Farm Fresh Direct' name." *Id*. ¶ 16. According to plaintiff, it has "suffered damages" as a result of the alleged breach of the Agreements. *Id*. ¶ 29.

Farm Fresh Direct avers that, on or about June 16, 2017, upon learning that Downey and Clipper City violated "the Agreement," Downey and Clipper City were terminated. ECF 1, ¶ 14. Plaintiff does not specify which agreement, the IRA or the NCA, was allegedly violated.

In his Counterclaim, Downey argues that Farm Fresh Direct "forced" him to sign the IRA and the NCA by "threatening to withhold" his "Earned Pay" unless and until he agreed to

sign the Agreements. ECF 33-13, ¶ 41. He asks the Court to "declare" the IRA and the NCA "Fraudulent, Unenforceable and Illegal." *Id.* at 9.

**B.**

As indicated, on June 26, 2017, Farm Fresh Direct filed suit against Sinsky, Downey, Clipper City, and Farm Fresh Home. ECF 1. Sinsky answered the Complaint in July 2017. *See* ECF 10. Sinsky subsequently moved to amend her Answer. ECF 26. The Motion to Amend is unopposed by plaintiff. *See* Docket.[5]

Downey filed his Answer with the Clerk of the Court on July 19, 2017. *See* ECF 49. For unknown reasons, his Answer was not placed on the docket at that time. By Order of April 2, 2018 (ECF 48), I directed the Clerk to "place Downey's Answer to the Complaint on the Docket, and to indicate on the Docket that Downey filed his Answer with the Court on July 19, 2017," as reflected on the date stamp.

On August 14, 2017, the Court was notified that Downey had filed for bankruptcy. *See* ECF 15.[6] Therefore, the case was stayed as to Downey under 11 U.S.C. § 362(a)(1). ECF 16.

No attorney has entered an appearance for Clipper City or Farm Fresh Home. *See* Docket. Thus, they have not responded to the suit lodged by Farm Fresh Direct. On August 15, 2017, plaintiff moved for Clerk's entry of default as to Farm Fresh Home and Clipper City. ECF 17. The Clerk entered default as to Clipper City on September 7, 2017 (ECF 19), and as to Farm

---

[5] Although the Docket reflects that the Motion to Amend was filed by "Seven Downey" (*see* Docket entry of ECF 26), the Motion to Amend is in Sinsky's name and is signed by her, not Downey. *See* ECF 26 at 1, 7-8. However, Downey signed the Certificate of Service attached to Sinsky's Motion to Amend. *See id.* at 10. Farm Fresh Direct does not assert that Downey, who is not a lawyer, unlawfully filed the Motion to Amend on behalf of Sinsky.

[6] Based on the Order of Discharge (ECF 41-1 at 1-2) and Final Decree (ECF 41-1 at 3) in Downey's bankruptcy proceedings, Downey filed for bankruptcy under Chapter 7 of the Bankruptcy Code, codified at 11 U.S.C. §§ 701-784, on August 2, 2017.

Fresh Home on September 27, 2017. ECF 20. On September 28, 2017, plaintiff filed a two-page Motion for Default Judgment, solely against Farm Fresh Home. ECF 21. By Memorandum (ECF 22) and Order (ECF 23) of October 6, 2017, I denied plaintiff's Motion for Default Judgment as to Farm Fresh Home, without prejudice.

While the case was stayed as to Downey, he filed multiple submissions. *See* Docket. For example, he asked the Court to allow him to represent Farm Fresh Home and Clipper City in this case. ECF 30. By Order of November 6, 2017 (ECF 38), I reminded Downey, as I had done previously, that an LLC may only appear in court through counsel. *See* ECF 11; ECF 16; ECF 22; ECF 27; ECF 38. Therefore, I denied Downey's request. *See* ECF 38.

Given Downey's many filings, by Order of November 6, 2017 (ECF 38), I directed Downey and Farm Fresh Direct to provide a status report as to Downey's bankruptcy proceedings; "the appropriateness of Downey's recent filings with this Court, given the stay; and whether the Court should lift the stay" as to Downey. By correspondence to the Court dated November 16, 2017 (ECF 41), plaintiff stated that "Downey obtained a discharge in his Chapter 7 bankruptcy proceeding on Tuesday, November 14, 2017." *Id.* at 1; *see also* ECF 41-1 at 1-2 (Order of Discharge, dated November 14, 2017); ECF 41-1 at 3 (Final Decree, dated November 14, 2017) (stating that "the Chapter 7 case" for Downey "is closed"). Downey did not submit a status report. *See* Docket. In light of the termination of Downey's bankruptcy proceeding (*see* ECF 41-1 at 3), I lifted the stay as to Downey by Order of March 29, 2018. ECF 46.

Additional facts are included in the Discussion.

## II.    Discussion

### A.  Sinsky's Motion to Amend

Sinsky's Motion to Amend her Answer implicates Rule 15. *See McCall-Scovens v.*

-10-

*Blanchard*, 15-cv-3433, 2016 WL 6277668, at *4 (D. Md. Oct. 27, 2016). Fed. R. Civ. P. 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). And, under Rule 15(a), the district court has "broad discretion concerning motions to amend pleadings . . . ." *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

Notably, the "court should freely give leave [to amend] when justice so requires." *See Foman*, 371 U.S. at 182; *Simmons*, 634 F.3d at 769; *Laber*, 438 F.3d at 426. Indeed, *Foman*, 371 U.S. at 182, "mandates a liberal reading of the rule's direction for 'free' allowance: motions to amend are to be granted in the absence of a 'declared reason' 'such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment, etc.'" *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (quoting *Foman*, 371 U.S. at 182); *see Booth*, 337 F. App'x at 312.

"Delay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."); *Brightwell v. Hershberger*, DKC-11-3278, 2015 WL 5315757, at *3 (D. Md. Sept. 10, 2015) ("Delay, however, 'cannot block an amendment which does not prejudice the opposing party.'") (quoting *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir. 1990)). "Rather, the delay must be accompanied by prejudice, bad faith, or

futility." *Edwards*, 178 F.3d at 242 (citation omitted); *see Simmons*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

As noted, plaintiff has not opposed Sinsky's Motion to Amend her Answer. *See* Docket. Accordingly, plaintiff has proffered no "declared reason" as to why the motion to amend should not be granted. *See Ward Elecs. Serv., Inc.*, 819 F.2d at 497. Moreover, I am unable to discern any potential prejudice to plaintiff. Accordingly, I shall grant Sinsky's Motion to Amend her Answer. ECF 26.

## B. Motions to Dismiss

### 1. Motion to Dismiss Downey's Counterclaim

In the Counterclaim (ECF 33), Downey argues that "Farm Fresh Direct . . . forced the Defendant (Steven E. Downey) to sign an 'Independent Representative Agreement' and 'Non-Compete Agreement' while threatening to withhold the Defendant (Steven E. Downey) 'Earned Pay' if the Defendant (Steven E. Downey) didn't execute specifically the 'Non-Compete Agreement' . . . which was forced upon 'Downey' (Defendant) exactly 44 days (2/20/2017-4/5/2017) later after 'Downey' began working with 'Farm Fresh Direct.'" ECF 33-13, ¶ 41. Additionally, Downey asks the Court to "declare the 'Independent' Representative Agreement' & 'Non-Compete Agreement'" to be "Fraudulent, Unenforceable and Illegal." *Id.* at 9.

The Counterclaim contains five counts. *See* ECF 33, ¶¶ 52-61. However, these counts fail to identify their respective causes of action. *Id.* And, several of the counts overlap. *Id.*

Essentially, Downey raises three arguments. First, he contends that the IRA and the NCA contain "Restrictive Covenants" that are unenforceable for being "overbroad," "arbitrary," and for improperly restricting Downey from engaging in "sales services." ECF 33 ¶¶ 45-51.

Second, Downey argues that he was forced to sign the IRA and the NCA under duress because Farm Fresh Direct refused to pay him for work he had already completed unless and until he signed the IRA and the NCA. *Id.* ¶¶ 48, 55, 57. Third, he argues that he was fraudulently induced into working for Farm Fresh Direct because Siegal had "advised at the time of hiring that there would be no 'Non-Compete Agreement' required as a condition of employment.'" *Id.* ¶ 53.

Farm Fresh Direct does not challenge the Counterclaim under Fed. R. Civ. P. 12. *See* ECF 34-1. Rather, Farm Fresh Direct argues that the Counterclaim should be dismissed because (1) the Trustee of Downey's bankruptcy estate should have raised the counterclaim in the context of the Chapter 7 bankruptcy proceedings; (2) Downey failed to move pursuant to Fed. R. Civ. P. 14(a)(1) for leave to file a third-party complaint against Fabian and Everett; and (3) "the causes of action asserted by Downey arise out of the transaction or occurrence that is the subject matter of Farm Fresh Direct's [breach of contract] claim and are therefore compulsory counterclaims which Downey was required to assert in his initial responsive pleading under Fed. R. Civ. P. 13(a)." ECF 34 at 1-2.

I address each of these arguments in turn.

**a.**

As indicated, Farm Fresh Direct argues that Downey's Counterclaim is subject to dismissal because the claims asserted by the Counterclaim were property of the bankruptcy estate. ECF 34-1 at 2. And, as property of the estate, plaintiff asserts that only the trustee had standing to assert those claims. *See id.* at 3.

The property of Downey's bankruptcy estate is itemized, in part, in his "Schedule A/B: Property" form ("Schedule"), which was filed in his bankruptcy proceeding. *See* ECF 40-5

(Schedule A/B Form).  Farm Fresh Direct did not submit a copy of the Schedule with its motion to dismiss Downey's Counterclaim.  *See* ECF 34.  However, Downey filed the Schedule as an exhibit to his motion to dismiss Count Three of the Complaint.  *See, e.g.*, ECF 40-5.  Moreover, Downey submitted an amended Schedule A/B Form with his opposition to the motion to dismiss the Counterclaim.  *See* ECF 50-1 ("Amended Schedule").  It appears that the Amended Schedule was filed in the bankruptcy proceeding on November 13, 2017.  *See id.*

If a "debtor's schedule does not disclose a cause of action that accrued pre-petition, that cause of action remains the property of the estate after the bankruptcy case is closed."  *Nicholas v. Green Tree Servicing, LLC*, 173 F. Supp. 3d 250, 255 (D. Md. 2016) (citing *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008), and *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26-27 (W.D. Va. 1993)).  Accordingly, the "debtor lacks standing to bring an unscheduled, and thus never abandoned, pre-petition claim."  *Id.* (citing *Miller v. Pac. Shore Funding*, 287 B.R. 47, 50 (D. Md. 2002)).

Line 33 of the Schedule indicates that Downey had claims against several third parties, but makes no mention of Farm Fresh Direct.  ECF 40-5 at 7.  Line 33 of the Amended Schedule indicates that Downey had a claim against one third party, but Downey made no mention of Farm Fresh Direct.  *See* ECF 50-1 at 6.

Line 34 of both the Schedule and the Amended Schedule asked Downey to describe "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims."  ECF 40-5 at 7; *accord* ECF 50-1 at 6.  On the Schedule, Downey did not specify that he had a claim against Farm Fresh Direct.  ECF 40-5 at 7.  Although the Amended Schedule indicates that Downey had four separate claims against Farm Fresh Direct, it does not describe the nature of those claims.  *See* ECF 50-1 at 6-7.

According to Downey, his lawyer, Robert Stahl, also "listed pending future claims against" Farm Fresh Direct on Line 30 of the Schedule. ECF 40 at 2, ¶ 8(iv); *see also* ECF 50-1 at 1. In particular, Line 30 asks for "[o]ther amounts someone owes you." ECF 40-5 at 6; *accord* ECF 50-1 at 6. On the Schedule and Amended Schedule, Downey indicated that Farm Fresh Direct owed him an "unknown" amount of money. ECF 40-5 at 6; ECF 50-1 at 6.

In its motion, plaintiff relies on *Wilson v. Dollar General Corp*, 717 F.3d 337 (4th Cir. 2013). The plaintiff in *Wilson* initially filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability. *Id.* at 341. While the charge was pending with the EEOC, the plaintiff filed for Chapter 13 bankruptcy relief. *Id.* In the bankruptcy proceeding, the plaintiff identified a "'Potential Claim against Dollar General" on the "Schedule B" form. *Id.* After the EEOC issued a right to sue letter, the plaintiff filed suit in federal court. *Id.* At that time, the bankruptcy proceedings were still pending. *Id.*

The issue before the Fourth Circuit was whether the plaintiff had standing to raise a claim of discrimination during the pendency of his Chapter 13 bankruptcy proceeding. *Id.* at 342. The Court noted that "[t]he filing of a bankruptcy petition creates a bankruptcy estate," which includes "both tangible and intangible property interests," such as "non-bankruptcy causes of action that arose out of events occurring prior to the filing of the bankruptcy petition." *Id.* at 342 (citing 11 U.S.C. §§ 301, 541(a) and *Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 869 (4th Cir. 1991)). Of import here, the Court stated that "in the Chapter 7 bankruptcy context—which requires liquidation and distribution of assets by the trustee—we have recognized, '[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim.'" *Id.* at 342 (quoting *Nat'l Am. Ins. Co. v. Rupport Landscapping Co., Inc.*, 187 F.3d

439, 441 (4th Cir. 1999)). However, the Court also noted that, in the context of a Chapter 13 bankruptcy, the "debtor 'steps into the role of the trustee and exercises concurrent authority to sue and be sued on behalf of the estate.'" *Id.* at 344 (quoting *Cable v. Ivy Tech State College,* 200 F.3d 467, 473 (7th Cir. 1999)). Accordingly, the Court concluded that the plaintiff "had standing in the district court to bring his pre-Chapter 13 claim." *Id.* at 344.

Downey filed for Chapter 7 bankruptcy on August 2, 2017. *See* ECF 41-1 at 1-3. By Order of August 15, 2017 (ECF 16), the case was automatically stayed as to him, under 11 U.S.C. § 362(a)(1). On November 2, 2017, Downey filed the Counterclaim against Farm Fresh Direct. ECF 33. By Order (ECF 41-1 at 1-2) and Final Decree (ECF 41-1 at 3) of November 14, 2017, the debtor was discharged and the bankruptcy proceedings were closed. And, by Order of March 29, 2018 (ECF 46), I lifted the stay as to Downey.

When Downey filed the Counterclaim on November 2, 2017, the Chapter 7 bankruptcy proceedings were pending. Therefore, at that time, he lacked standing to sue in this Court. *See Wilson*, 717 F.3d at 342. And, when the bankruptcy proceeding concluded, Downey, as the debtor, would have regained standing to pursue a claim on his own behalf *if* the claim listed as property on the schedule was abandoned by the trustee. *See Nat'l Am. Ins. Co.*, 187 F.3d at 441 (citing *Steyr-Daimler-Puch of Am. Corp. v. Pappas,* 852 F.2d 132, 136 (4th Cir. 1988), and *Pension Fund v. Tasemkin, Inc.,* 59 F.3d 48, 51 (7th Cir. 1995)); *see also Nicholas*, 173 F. Supp. 3d at 255 (D. Md. 2016) (citing *Nat'l Am. Ins. Co.*, 187 F.3d at 441) ("A debtor regains standing to bring claims that accrued pre-petition if those claims are abandoned" by the trustee).

Property belonging to a bankruptcy estate can be abandoned in three ways: (1) by the trustee, after notice and hearing; (2) by court order, on request of a party in interest and after notice and hearing; or (3) unless the court orders otherwise, items listed on the debtor's

schedules of property that have not been administered by the time the bankruptcy case closes are regarded as abandoned to the debtor. 11 U.S.C. §§ 554(a), (b), (c). Here, by the Order and Final Decree of the U.S. Bankruptcy Court for the District of Maryland (ECF 41-1 at 1-3), the estate of Downey was "fully administered," Downey's debts were "discharged," the trustee of the estate was "discharged," and the Chapter 7 case was "closed."

There is no indication that Downey's claim against Farm Fresh Direct was administered during the bankruptcy proceedings. Therefore, it appears that Downey's claims against Farm Fresh Direct were properly abandoned to him. Accordingly, at this juncture, Downey is entitled to assert his Counterclaim.

### b.

As noted, Farm Fresh Direct argues that Downey may not lodge the Counterclaim against Everett and Fabian, who are not parties to this litigation, because Downey did not seek leave to file a third-party complaint against them. ECF 34-1 at 4-5.

Fed. R. Civ. P. 14(a)(1) states: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."

As indicated, Downey filed his Answer on July 19, 2017. *See* ECF 49. Accordingly, Downey was required to seek leave of the Court by August 3, 2017, in order to add a third-party defendant to this litigation. However, due to his bankruptcy proceedings, the litigation was automatically stayed as to Downey as of August 2, 2017. *See* ECF 41-1 at 3; *see also* ECF 46. And, the stay was not lifted until March 29, 2018 (ECF 46). However, because Downey does not receive electronic filings, he would not have known of the lifting of the stay on that date.

In any event, this is much ado about nothing, because Downey's Counterclaim does not include a claim as to any third-party defendant. To be sure, the Counterclaim mentions Everett and Fabian under the heading of "Parties." *See* ECF 33 at 1, ¶¶ 2-6. However, Downey seeks relief only "against Plaintiff Farm Fresh Direct by A Cut Above, LLC." *See id.* at 1; *see also id.* at 53, 55, 57, 59-60. Indeed, in his prayer for relief, Downey asks the Court only to render "judgment against Plaintiff ('Farm Fresh Direct')." *Id.* at 9.

Downey has not named Fabian or Everett as third-party defendants. As such, Rule 14 has no bearing on Downey's Counterclaim against Farm Fresh Direct.

### c.

Farm Fresh Direct argues that, because the claims raised by Downey's Counterclaim are "compulsory counterclaims," Downey forfeited those claims by failing to raise them in his initial pleading. *See* ECF 34-1 at 5-6.

Under Fed. R. Civ. P. 13(a), a compulsory counterclaim must be asserted "against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" *Sue & Sam Mfg. Co. v. B-L-S Constr. Co.*, 538 F.2d 1048, 1050 (4th Cir. 1976). As to a permissive counterclaim, Fed. R. Civ. P. 13(b) "permits the filing of a counterclaim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.* at 1050-51.

In *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988), the Fourth Circuit outlined several questions that guide the determination of whether a counterclaim is compulsory or permissive: "(1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would *res judicata* bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as

the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?" *Id.* at 331 (citing *Sue & Sam Mfg. Co.*, 538 F.2d at 1051-53); *see Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 452 (D. Md. 2014). Notably, a "court need not answer all these questions in the affirmative for the counterclaim to be compulsory. Rather, the tests are less a litmus, more a guideline." *Painter*, 863 F.2d at 331 (citations omitted).

For the reasons explained below, I am satisfied that the claims raised by Downey are compulsory counterclaims under the Fourth Circuit's four-question framework. *See Painter*, 863 F.2d at 331. Under question one, the issues of fact and law raised by Count Three of the Complaint, which pertain to whether Downey and Clipper City breached the IRA and the NCA (ECF at 2-7), are intertwined with those raised by Downey's Counterclaim. As noted, the Counterclaim argues that the IRA and the NCA are unenforceable and illegal. *See* ECF 33. Thus, answering question three, similar evidence will likely be used to support or refute the claim of breach of the Agreements and the defense of duress in the Counterclaim. As to question four, Downey's Counterclaim calls into question the enforceability and legality of the Agreements Farm Fresh Direct alleges were breached. *See* ECF 33, ¶¶ 22-43; *see also* ECF 1, ¶¶ 11-16.

Under Fed. R. Civ. P. 13(a)(1), "A *pleading* must state as a counterclaim any [compulsory] claim that—at the time of its service—the pleader has against an opposing party . . . ." (Emphasis added). In other words, because Downey raised a compulsory counterclaim, he should have included it with his Answer of July 19, 2017. *See* ECF 49. Farm Fresh Direct argues that because Downey did not include his Counterclaim with his Answer, filed on July 19, 2017 (*see* ECF 49), he has forfeited those claims. *See* ECF 34-1 at 5-6. However, Farm Fresh Direct fails to cite a supporting decision of the Fourth Circuit.

When a compulsory counterclaim is omitted from an initial pleading, the Court may allow the initial pleading to be amended, pursuant to Rule 15. *See* 6 ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE, § 1430 ("[T]he decision whether to allow an amendment to add an omitted counterclaim is governed exclusively by Rule 15."). But, by August 2, 2017, the case was stayed as to Downey. He filed his Counterclaim on November 2, 2017, while the suit was stayed as to him. ECF 33.

Downy did not file a motion seeking leave to amend his initial Answer, however. *See* Docket. But, Downey is self-represented. And, the Court is to construe liberally the pleadings of a pro-se litigant. *See Erickson*, 551 U.S. 94; *see also White*, 886 F.2d at 722-23. And, by filing the Counterclaim, it is evident that Downey sought to amend his initial Answer so as to incorporate the Counterclaim.

The Court has broad discretion concerning the amendment of a pleading. *See Booth*, 337 F. App'x at 312; *see also Foman*, 371 U.S. at 182; *Laber*, 438 F.3d at 426-29. Moreover, the Court should freely grant leave to amend "when justice so requires." *Foman*, 371 U.S. at 182; *see Simmons*, 634 F.3d at 769; *Laber*, 438 F.3d at 426. As discussed earlier, leave to amend should be granted "in the absence of a 'declared reason'" to the contrary, such as bad faith, undue delay, undue prejudice to the opposing party, or futility of the requested amendment. *Ward Elecs. Serv., Inc.*, 819 F.2d at 497 (quoting *Foman*, 371 U.S. at 182); *see also Booth*, 337 F. App'x at 312. And, delay alone is an insufficient reason to deny leave to amend. *See Edwards*, 178 F.3d at 242.

Here, if Downey is not permitted to amend his Answer, his Counterclaim may be barred in any subsequent action, based on res judicata or limitations, resulting in prejudice to Downey. "When the omitted counterclaim is compulsory, the reasons for allowing its introduction by

amendment become even more persuasive, since an omitted compulsory counterclaim cannot be asserted in subsequent cases (at least in the federal courts) and the pleader will lose the opportunity to have the claim adjudicated." WRIGHT & MILLER, § 1409. Moreover, I am unable to discern any prejudice to Farm Fresh Direct if Downey is allowed to amend his Answer. *See* ECF 33; ECF 34-1.

Even assuming, *arguendo*, that Downey may be able to assert his claims in another proceeding, judicial economy is served by considering all the claims in the same litigation.

Therefore, I shall construe the Counterclaim (ECF 33) as an amendment to the Answer (ECF 49).

## 2. Motion to Dismiss Count Three of the Complaint

Downey has moved to dismiss Count Three of the Complaint (ECF 40), and has submitted exhibits in support of the motion. *See* ECF 40-1 through ECF 40-9. As noted, Count Three of the Complaint alleges breach of contract against Downey and Clipper City. ECF 1, ¶¶ 27-30. Because Downey is self-represented, he may not file the motion on behalf of Clipper City. *See* Local Rule 101.1.a.

### a. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.

To be sure, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ____ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam). Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those

facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative

defense 'clearly appear[ ] on the face of the complaint.'"  *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

### b.  Rule 56(a)

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").  The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is

appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. As indicated, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir.

2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### c. Analysis

The motion is styled as a "Motion for Partial Dismissal" (ECF 40 at 1), but it actually "seeks partial summary judgment" of the breach of contract claim. *Id.* ¶ 6. Accordingly, the basis on which Downey asks the Court to dismiss Count Three of the Complaint is not apparent. Moreover, construed liberally, the motion fails to raise any viable argument pursuant to Rule 12 or Rule 56. Rather, it reiterates several arguments made in the Counterclaim, *i.e.*, that the IRA and the NCA are allegedly "illegal" and "unenforceable." ECF 40, ¶ 9.

In its opposition (ECF 43), Farm Fresh Direct construes Downey's motion as a Rule 56 motion for partial summary judgment (*id.* at 1), and argues that Downey has not set forth any facts to establish that, as a matter of law, he is entitled to summary judgment. *Id.* at 3. In the alternative, Farm Fresh Direct argues that, if Rule 12 controls, the Complaint makes sufficient allegations to withstand the motion. *See* ECF 43 at 3-4. Farm Fresh Direct offers no argument as to the claims that the Agreements are illegal and unenforceable. *See* ECF 43. And, Downey has not filed a reply. *See* Docket.

As indicated, Downey has not alleged, pursuant to Rule 12, that Farm Fresh Direct has failed to allege a claim of breach of contract. Indeed, Downey does not discuss the legal elements relevant to a claim of breach of contract. Nor has he argued, pursuant to Rule 56, that the evidence demonstrates he did not breach the Agreements. In other words, Downey's motion provides no legal or factual basis of support. Accordingly, I shall deny Downey's motion (ECF 40).

### C. Motion to Set-Aside Default Judgment

Downey filed a Motion to Set-Aside Default Judgment on behalf of Clipper City and Farm Fresh Home. ECF 35. In the Motion, Downey asks the Court, *inter alia*, to "'Set-Aside the 'Default Judgment' against 'Clipper City Lending, LLC' and 'Farm Fresh Direct Home Food Services, LLC' for 30 to possibly 60 days . . . ." *Id.* at 11.

As I have repeatedly stated, Downey may only represent himself; he may not represent Sinsky, Clipper City, or Farm Fresh Home. *See* ECF 11; ECF 16; ECF 22; ECF 27; ECF 38. Local Rule 101.1.a states: "Individuals who are parties in civil cases may only represent themselves. . . . All parties other than individuals must be represented by counsel." Because Downey filed the Motion to Set-Aside Default Judgment on behalf of Clipper City and Farm Fresh Home (ECF 35), the motion violates Local Rule 101.1.a.

Even assuming the Motion to Set-Aside Default Judgment (ECF 35) had been filed by an attorney, no default *judgment* has been entered in this litigation. *See* Docket. As indicated, on August 15, 2017, plaintiff moved for Clerk's entry of default as to Farm Fresh Home and Clipper City. ECF 17. The Clerk entered an order of default as to Clipper City on September 7, 2017 (ECF 19), and as to Farm Fresh Home on September 27, 2017. ECF 20. That does not constitute a judgment.

Plaintiff subsequently moved for default judgment as to Farm Fresh Home. ECF 21. However, I denied plaintiff's motion, without prejudice. ECF 22; ECF 23. Accordingly, I shall deny Downey's Motion to Set-Aside Default Judgment.

### D. Downey's Motions to Request and Set-In a Hearing Date

As indicated, Downey has filed two motions requesting a hearing. ECF 37; ECF 39. The first of these motions (ECF 37) was filed on behalf of Downey, Clipper City, and Farm Fresh Home. *See id.* at 1. As stated, Downey may not lodge a motion on behalf of Clipper City or Farm Fresh Home. *See* Local Rule 101.1.a. Accordingly, the first motion requesting a hearing (ECF 37) shall be denied, based on a violation of Local Rule 101.1.a.

The second motion requesting a hearing (ECF 39) was filed by Downey on his own behalf. *Id.* He asks the Court to hold a hearing with regard to his Counterclaim. *See* ECF 39 at 1-2. However, at this juncture, a hearing is not necessary to resolve any of the motions. *See* Local Rule 105.6 ("Unless otherwise ordered by the Court, . . . all motions shall be decided on the memoranda without a hearing."). Therefore, I shall deny ECF 39.

### E. Motion for Order to Show Cause

Farm Fresh Direct has filed a motion (ECF 45) asking the Court to issue a show cause order as to why Downey should not be held in contempt and subject to sanctions, in light of Downey's repeated violations of this Court's Orders (ECF 11; ECF 16; ECF 22; ECF 27; ECF 38) instructing Downey that he may only represent himself. *See* ECF 45-1 at 1-3, 5.

In this litigation, Downey has indeed filed documents on behalf of Clipper City and Farm Fresh Home (*see, e.g.*, ECF 37), despite my orders informing him that he is prohibited from doing so. *See* ECF 11; ECF 16; ECF 22; ECF 27; *see also* Local Rule 101.1.a (stating that "[i]ndividuals" such as Downey "may only represent themselves," and that "parties other than

individuals," such as Clipper City and Farm Fresh Home, "must be represented by counsel").

I shall deny the request for a show cause order. But, Downey is forewarned that if he should continue to submit filings on behalf of Clipper City and/or Farm Fresh Home, I will, at that time, entertain a motion for sanctions, to include attorney's fees and costs.

### III.    Conclusion

For the forgoing reasons, I shall grant Sinsky's Motion to Amend her Answer (ECF 26); I will construe the Counterclaim (ECF 33) as an amendment to Downey's Answer (ECF 49); I shall deny Farm Fresh Direct's Motion to Dismiss Downey's Counterclaim (ECF 34); I shall deny Downey's Motion to Dismiss Count Three of the Complaint (ECF 40); I shall deny Downey's Motion to Set-Aside Default Judgment as to Clipper City and Farm Fresh Home (ECF 35); I shall deny the motions requesting hearings (ECF 37; ECF 39); and I shall deny Farm Fresh Direct's motion for a show cause order (ECF 45).

An Order follows.


Date:  May 1, 2018                                   _____/s/_____
                                                                       Ellen Lipton Hollander
                                                                       United States District Judge